*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DEON REYNARD MORGAN,

Defendant-Appellant.

UNPUBLISHED
January 21, 2020

No. 343809
Ingham Circuit Court
LC No. 15-000262-FH

Before: LETICA, P.J., and GADOLA and CAMERON, JJ.

PER CURIAM.

Defendant, Deon Reynard Morgan, appeals his convictions of possession with intent to deliver 50 or more but less than 450 grams of heroin, MCL 333.7401(2)(a)(*iii*), resisting or obstructing a police officer, MCL 750.81d(1), possession of a firearm by a felon ("felon in possession"), MCL 750.224f, and possession of a firearm during the commission of a felony, second offense ("felony-firearm"), MCL 750.227b(1). The trial court sentenced Morgan as a fourth-offense habitual offender, MCL 769.12, to serve terms of imprisonment of 160 to 240 months for the heroin conviction, 40 to 60 months for the felon-in-possession conviction, 8 to 15 years for the resisting or obstructing conviction, and 5 years for the felony-firearm conviction. We affirm Morgan's convictions but remand for correction of the judgment of sentence.

## I. FACTS

This case arose from a drug-trafficking investigation that spanned several months. Between January 16, 2015 and March 4, 2015, a confidential informant participated in six controlled purchases of heroin from Morgan. The confidential informant purchased the heroin with prerecorded funds that were provided by law enforcement. As part of the investigation, surveillance was conducted on Morgan and the vehicle that Morgan used in the controlled buys. Morgan was ultimately associated with two separate residences and was observed entering a storage facility on two occasions.

-1-

On March 4, 2015, search warrants were issued for the residential addresses associated with Morgan. In one of the residences, a paint can containing 226 grams of heroin and 27.3 grams of cocaine was located in the closet of the master bedroom. Law enforcement also located some of the prerecorded currency that was used in the controlled purchases, digital scales, and packaging material similar to the materials used in the controlled purchases. A photograph of Morgan with a female companion, a letter addressed to "Khalil Morgan," and men's clothing were located in the bedroom. Legal paperwork showing that Morgan had attempted to change his name from "Deon Morgan" to "Khalil Morgan" was found at the other residential address. Law enforcement also located digital scales, packaging material similar to the material used in the controlled purchases, and two magazines for a Ruger P345 pistol.

Also on March 4, 2015, Morgan was stopped while he was attempting to drive away from a grocery store. At the time of the stop, Morgan was driving the same vehicle he used during the controlled purchases. Morgan failed to comply with police commands to lower the vehicle's window, to open his door, or to leave the vehicle. The police forced entry into the vehicle in order to place Morgan in custody. Prerecorded currency used in the controlled purchases was located on Morgan's person. Heroin and a key to a storage unit that was leased to Morgan's girlfriend were located in the vehicle. The storage unit was searched, and a Ruger P345 pistol was found inside of a luggage bag.

Morgan was charged with possession with intent to deliver 50 or more but less than 450 grams of heroin, possession with intent to deliver less than 50 grams of cocaine, resisting or obstructing a police officer, felon in possession, and felony-firearm. Morgan was found not guilty of possession with intent to deliver less than 50 grams of cocaine but was convicted of the remaining charges. Morgan was sentenced to terms of imprisonment, and this appeal followed.

## II. SPEEDY TRIAL CLAIM

Morgan argues that the trial court erred by denying his motion to dismiss the charges on the basis that Morgan's right to a speedy trial was violated. We disagree.

In general, "[t]his Court reviews a trial court's ruling regarding a motion to dismiss for an abuse of discretion." *People v Adams*, 232 Mich App 128, 132; 591 NW2d 44 (1998). More particularly, the determination whether a defendant was denied a speedy trial is a mixed question of fact and law. *People v Gilmore*, 222 Mich App 442, 459; 564 NW2d 158 (1997). On appeal, the trial court's factual findings are reviewed for clear error, but the application of constitutional law is reviewed de novo. *Id*.

Both the United States and Michigan Constitutions recognize a criminal defendant's right to a speedy trial. US Const, Am VI; Const 1963, art 1, § 20. See also MCL 768.1; MCR 6.004(A). Claims of violation of the right to a speedy trial are evaluated on the basis of four factors: "(1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *People v Williams*, 475 Mich 245, 261-262; 716 NW2d 208 (2006).

## A. LENGTH OF DELAY

"The time for judging whether the right to a speedy trial has been violated runs from the date of the defendant's arrest." *Id*. at 261. A delay of less than 18 months requires the defendant to demonstrate that he was prejudiced by the delay, while a delay exceeding 18 months is presumptively prejudicial and shifts the burden of rebutting the presumption to the prosecution. *People v Cain*, 238 Mich App 95, 112; 605 NW2d 28 (1999). In this case, Morgan was arrested on March 4, 2015. Eighteen months after Morgan's arrest, his first trial began. It ended in a mistrial on September 29, 2016. Morgan's second trial began on September 25, 2017, which was 30 months after Morgan's arrest. Because the delay exceeded 18 months, the delay was presumptively prejudicial, shifting the burden of rebutting the presumption to the prosecutor. See *id*. Therefore, this factor weighs in favor of Morgan.

## B. REASONS FOR THE DELAY

"In assessing the reasons for delay, this Court must examine whether each period of delay is attributable to the defendant or the prosecution." *People v Waclawski*, 286 Mich App 634, 666; 780 NW2d 321 (2009). Delays resulting from a request for an adjournment by a defendant are attributable to the defendant. *Cain*, 238 Mich App at 113. Unexplained delays or otherwise unattributed trial-court delays are charged to the prosecution. *People v Lown*, 488 Mich 242, 261-262; 794 NW2d 9 (2011). After review of the entire record, we attribute some of the delays to Morgan and some to the prosecutor. The prosecutor conceded before the trial court that he was responsible for some of the delays. On appeal, the prosecutor points out that, between March 4, 2015 and February 17, 2016, Morgan hired and fired three different attorneys. Before the first trial, Morgan filed three motions to suppress, which the trial court found required evidentiary hearings. The evidentiary hearings were adjourned multiple times. The trial court ultimately held the evidentiary hearings on September 20, 2016, which was one day before the first trial began. A substantial amount of the delay can be attributed to the fact that the first trial ended in a mistrial on September 29, 2016. After the mistrial, Morgan's fourth attorney requested to withdraw from the case. Morgan was appointed another attorney, who indicated at a pretrial conference that she required time to prepare for trial. That attorney was later permitted to withdraw as Morgan's attorney. Morgan's sixth attorney was appointed in March 2017. Before the second trial began, Morgan filed motions for funding for a private investigator and to dismiss the charges as a result of allegations of a speedy trial violation; the motions were denied by the trial court following hearings. The second trial began on September 25, 2017, and the jury returned its verdict on October 5, 2017. Consequently, because the delays are attributable to both Morgan and the prosecution, this factor does not weigh in favor of either party.

## C. ASSERTION OF RIGHT TO A SPEEDY TRIAL

In order to preserve a speedy trial issue for appeal, a defendant must make "a formal demand on the record." *People v Rogers*, 35 Mich App 547, 551; 192 NW2d 640 (1971). Morgan did not formally assert his right to a speedy trial until July 2017, when he filed a motion requesting the same. The motion was filed more than 28 months after Morgan's arrest and 76 days before Morgan's second trial began. We conclude that Morgan's failure to more zealously pursue a speedy trial motion is indicative of the lack of prejudice that the delay actually caused him. See *Barker v Wingo*, 407 US 514, 531-532; 92 S Ct 2182; 33 L Ed 2d 101 (1972)

("Whether and how a defendant asserts his right is closely related to the other factors we have mentioned. . . . The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right."). Therefore, this factor does not weigh in favor of Morgan.

## D. PREJUDICE

Prejudice can flow "to the person" or "to the defense." *Williams*, 475 Mich at 264 (citation omitted). The *Barker* Court, in providing guidance for evaluating the prejudice factor, identified three defendant interests that the right to a speedy trial was designed to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker*, 407 US at 532. The last of these concerns is the most serious "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id*. As already stated, because the delay in the instant case was more than 18 months, it is the prosecutor's burden to rebut the presumption of prejudice. *Cain*, 238 Mich App at 112.

Morgan argues that the delay between his arrest and the second trial impaired his defense because several potential witnesses became unavailable. These witnesses include the registered owner of the vehicle that Morgan was driving when he was arrested, an individual who was on the phone with Morgan when he was arrested, and Morgan's girlfriend. However, Morgan has not provided any evidence to support that the witnesses were unavailable to him because of the delay. At a motion hearing, trial counsel noted that Morgan's girlfriend would likely be able to appear at trial. At a later hearing, the prosecutor indicated that he was willing to assist Morgan with securing the witnesses by having law enforcement locate them and by issuing subpoenas for their appearances at trial. Morgan declined the prosecutor's offer on the record, indicating that he was "concerned" about law enforcement contacting the witnesses. Thus, Morgan has failed to present evidence that the witnesses were unavailable as a result of the delay. Morgan also argues that he suffered personal prejudice as a result of developing health issues while he was incarcerated. However, personal prejudice does not weigh in favor of the defendant if his defense was not prejudiced by the delay. *Williams*, 475 Mich at 264. Because Morgan has failed to provide evidence to support that the witnesses were unavailable as a result of the delay, Morgan's personal prejudice does not weigh in his favor.

In sum, of the four factors, one weighs in favor of Morgan and two weigh in favor of the prosecutor. We conclude that the prosecutor successfully rebutted the presumption of prejudice by establishing that there was no showing of prejudice from the delay. Consequently, Morgan is not entitled to vacation of his convictions.

## III. SEARCH OF THE STORAGE UNIT

Morgan argues that the trial court erred by denying his motion to suppress evidence that law enforcement recovered from the storage unit because Morgan's girlfriend did not freely and voluntarily give consent to search the storage unit.

"We review de novo a trial court's ultimate decision on a motion to suppress on the basis of an alleged constitutional violation." *People v Gingrich*, 307 Mich App 656, 661; 862 NW2d

432 (2014). An appellate court reviews a trial court's findings of fact in a suppression hearing for clear error, but the application of the underlying law is reviewed de novo as a legal determination. *People v Slaughter*, 489 Mich 302, 310; 803 NW2d 171 (2011).

"The constitutionality of any search and seizure conducted by the police depends on an analysis of the Fourth Amendment of the United States Constitution and art 1, § 11 of the Michigan Constitution of 1963." *People v Toohey*, 438 Mich 265, 270; 475 NW2d 16 (1991). "Searches and seizures conducted without a warrant are unreasonable per se, subject to several specifically established and well-delineated exceptions." *People v Borchard-Ruhland*, 460 Mich 278, 293-294; 597 NW2d 1 (1999). Among these exceptions "is a search conducted pursuant to consent." *Id*. at 294. Consent must be freely and voluntarily given, and "[t]he presence of coercion or duress normally militates against a finding of voluntariness." *Id*.

In this case, Morgan's girlfriend testified at an evidentiary hearing that she was confused, stressed, and under the influence of medication at the time she interacted with law enforcement on March 4, 2015. Morgan's girlfriend testified that she did not recall giving law enforcement permission to search the storage unit. In an affidavit, Morgan's girlfriend denied that she voluntarily signed the consent to search form. Testimony of law enforcement at the hearing conflicted with the testimony of Morgan's girlfriend. The trial court rejected the affidavit and found that Morgan's girlfriend voluntarily signed the consent form. The trial court further held that it was inevitable that a firearm would have been discovered given that Morgan was found with a key to the storage unit.

Assuming without deciding that the trial court clearly erred by determining that Morgan's girlfriend voluntarily consented to the search of the storage unit, we conclude that the trial court correctly applied the doctrine of inevitable discovery. "Generally, if evidence is unconstitutionally seized, it must be excluded from trial." *People v Hyde*, 285 Mich App 428, 439; 775 NW2d 833 (2009) (quotation marks and citation omitted). However, there are exceptions to the exclusionary rule. One such exception is the inevitable discovery doctrine. *Id*. This Court has described the inevitable discovery doctrine as follows: "The inevitable discovery doctrine, as applied by Michigan caselaw, permits the admission of evidence obtained in violation of the Fourth Amendment if it can be shown by a preponderance of the evidence that the items found would have ultimately been obtained in a constitutionally accepted manner." *Id*. at 439-440.

In this case, a preponderance of the evidence supports that law enforcement would have been able to procure a search warrant for the storage unit. A search warrant must be supported by probable cause. US Const, Amend IV; Const 1963, art 1, § 11. See also MCL 780.651. Probable cause exists where "a reasonably cautious person could have concluded that there was a 'substantial basis' for the finding of probable cause." *People v Russo*, 439 Mich 584, 603; 487 NW2d 698 (1992). In this case, law enforcement had already obtained search warrants for two residences that were associated with Morgan in relation to controlled purchases that were witnessed by law enforcement. A large sum of money, prerecorded funds, heroin, and cocaine were located in one of the residences tied to Morgan. Packaging materials consistent with the materials used during the controlled purchases were located at both residences. When Morgan was arrested, prerecorded funds were located on his person. The vehicle that Morgan was driving when he was arrested contained heroin and a key to the storage unit; Morgan was seen

driving the vehicle where the key was found during the controlled purchases. Additionally, during law enforcement's surveillance of Morgan, Morgan was observed driving to the storage facility. Because the inevitable discovery doctrine applies, the trial court's decision to deny Morgan's motion to suppress the evidence located in the storage unit was not error.

## IV. MOTION FOR DIRECTED VERDICT

Morgan argues that the trial court erred by denying his motion for a directed verdict on the felony-firearm and felon in possession charges because there was insufficient evidence to support that he possessed the firearm that was found in the storage unit. We disagree.

"When reviewing a trial court's decision on a motion for a directed verdict, this Court reviews the record de novo to determine whether the evidence presented by the prosecutor, viewed in the light most favorable to the prosecutor, could persuade a rational trier of fact that the essential elements of the crime charged were proved beyond a reasonable doubt." *People v Aldrich*, 246 Mich App 101, 122; 631 NW2d 67 (2001).

MCL 750.227b(1) provides that a "person who carries or has in his or her possession a firearm when he or she commits or attempts to commit a felony . . . is guilty of a felony . . . ." Thus, the crime of felony-firearm has two elements: a defendant must possess the firearm and he must do so during the commission of or attempted commission of a felony. *People v Johnson,* 293 Mich App 79, 82-83; 808 NW2d 815 (2011). The elements of felon in possession are "(1) the defendant is a felon who possessed a firearm (2) before his right to do so was formally restored under MCL 28.424." *People v Bass*, 317 Mich App 241, 267-268; 893 NW2d 140 (2016).

Michigan courts recognize that possession can be actual or constructive and may be proven by circumstantial evidence. *People v Hill*, 433 Mich 464, 469-470; 446 NW2d 140 (1989). To find constructive possession, there must be proximity to the firearm with an "indicia of control." *People v Burgenmeyer*, 461 Mich 431, 438; 606 NW2d 645 (2000). Therefore, it is enough that the firearm's location is known to the defendant and the firearm is reasonably accessible to him. *Id*. Possession is not dependent on the defendant's access to the firearm at the time of arrest or police raid. *Id*. at 438-439. However, a person's mere presence in proximity to contraband is insufficient, by itself, to prove possession. *People v Wolfe*, 440 Mich 508, 538; 489 NW2d 748, amended 441 Mich 1201 (1992). "There must be some link shown between the person charged with the possession offense and the contraband discovered." *People v Vaughn*, 200 Mich App 32, 36; 504 NW2d 2 (1993).

We conclude that there was sufficient evidence to persuade a rational trier of fact that Morgan constructively possessed the firearm. On two occasions, law enforcement observed Morgan going to the storage facility where the firearm was located. After Morgan was arrested, the vehicle Morgan was driving was searched and a key to a storage unit within that storage facility was located in the vehicle. The key and Morgan's identification were located in the same bag. Although the firearm was located inside a bag rather than in plain sight, circumstantial evidence linked Morgan to the firearm. One of the residences that was associated with Morgan contained magazines for the type of pistol that was located in the storage unit. After Morgan was arrested and lodged in the county jail, he wrote letters to his girlfriend. The letters, which were

admitted at trial, supported that Morgan knew that the gun was in the storage unit and that his DNA might be found on the gun. Consequently, a rational trier of fact could find that the elements of felony-firearm and felon in possession were proven beyond a reasonable doubt. Accordingly, the trial court did not err in denying Morgan's motion for a directed verdict on those charges.

## V. OTHER ACTS EVIDENCE

Morgan argues that he was denied the right to a fair trial by the admission of other-acts evidence. We disagree.

This Court reviews a trial court's decision whether to admit evidence of other bad acts for an abuse of discretion. *People v Kahley*, 277 Mich App 182, 184; 744 NW2d 194 (2007). "A trial court abuses its discretion when it fails to select a principled outcome from a range of reasonable and principled outcomes." *Id*.

Morgan was charged with possession with intent to deliver heroin on the basis of the heroin found during one of the residential searches, not on the basis of any of the controlled purchases. Before trial, the prosecutor moved for the admission of evidence relating to the controlled purchases pursuant to MRE 404(b). Morgan objected to admission of the evidence on the ground that "the jury will infer from this evidence" Morgan's "character or criminal propensity." In relevant part, the trial court held that the evidence concerning the controlled buys was admissible to "give the jury a real picture of what's gone on here." The trial court further held that it would give a limiting instruction and that "the jury will certainly have their opportunity to weigh the full picture and see if the puzzle pieces fit together . . . ."

Evidence of crimes, wrongs, or other acts is inadmissible to prove that a defendant acted in conformity with those acts. *People v Crawford*, 458 Mich 376, 383; 582 NW2d 785 (1998). Such evidence may, however, be admissible for another purpose. *People v Sabin (After Remand)*, 463 Mich 43, 56; 614 NW2d 888 (2000). A nonexclusive list of permissible purposes for admitting other-acts evidence is set forth in MRE 404(b):

> Evidence of other crimes, wrongs, or acts . . . may . . . be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case. [MRE 404(b)(1).]

MRE 404(b) is a rule of inclusion, not exclusion. *People v VanderVliet*, 444 Mich 52, 65; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994). Thus, relevant evidence of other acts does not violate MRE 404(b) unless it is offered for the sole purpose of demonstrating the defendant's criminal propensity to establish that he acted in conformity therewith. *Id*.

In *VanderVliet*, the Michigan Supreme Court adopted the approach to assess relevance under MRE 404(b) that was enunciated by the United States Supreme Court in *Huddleston v United States*, 485 US 681, 691-692; 108 S Ct 1496; 99 L Ed 2d 771 (1988):

First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury. [*VanderVliet*, 444 Mich at 55.]

"[I]t is essential that prosecutors . . . be able to give the [fact-finder] an intelligible presentation of the full context in which disputed events took place." *People v Sholl*, 453 Mich 730, 741; 556 NW2d 851 (1996).

It is the nature of things that an event often does not occur singly and independently, isolated from all others, but, instead, is connected with some antecedent event from which the fact or event in question follows as an effect from a cause. When such is the case and the antecedent event incidentally involves the commission of another crime, the principle that the jury is entitled to hear the "complete story" ordinarily supports the admission of such evidence. [*People v Delgado*, 404 Mich 76, 83; 273 NW2d 395 (1978).]

Although a "context" purpose is not explicitly articulated in the rules of evidence, other-acts evidence may be admitted for that purpose if it otherwise satisfies the requirements for admission under MRE 404(b). See *People v Jackson*, 498 Mich 246, 268-270; 869 NW2d 253 (2015) (rejecting a res gestae exception to MRE 404(b) but reasoning that *Delgado* and *Sholl* "provide firm support for the notion that evidence meeting their 'res gestae' definition is potentially relevant and admissible").

We conclude that the evidence concerning the controlled buys was indeed relevant for the purpose of providing context to the jury of the charged offense of possession with intent to deliver heroin. The evidence explained why law enforcement was surveilling Morgan and paying special attention to the places Morgan traveled to and the vehicle Morgan was driving. The evidence also explained why law enforcement took interest in the wrapping materials they discovered in the residences associated with Morgan. Moreover, the jury needed to learn how prerecorded currency was used in the controlled purchases to understand the significance of law enforcement seizing some of that currency from residences associated with Morgan. Within this context, it was more probable that Morgan was delivering heroin given the large supply of heroin that was stored in the paint can in the bedroom and the packaging materials located in the residences associated with Morgan. Thus, the evidence was relevant to a material fact at trial. See *People v Cameron*, 291 Mich App 599, 609-610; 806 NW2d 371 (2011).

Furthermore, contrary to Morgan's arguments on appeal, this evidence was not unfairly prejudicial. MRE 403 "does not prohibit prejudicial evidence; only evidence that is unfairly so." *People v Bass*, 317 Mich App 241, 259; 893 NW2d 140 (2016) (quotation marks and citation omitted). Also, the danger of unfair prejudice must substantially outweigh the probative value of the evidence to require exclusion. MRE 403; *Bass*, 317 Mich App at 259. In this case, the other-acts evidence was more than marginally probative, and it is improbable that the jury gave it

undue or preemptive weight because the jury was properly instructed that it should not consider evidence of Morgan's other acts for propensity purposes.[1] Jurors are presumed to follow their instructions. See *id*. at 263. Thus, we conclude that the trial court did not abuse its discretion when admitting the evidence under MRE 404(b).

Furthermore, even if we were to conclude that the trial court abused its discretion in admitting the evidence, Morgan would not automatically be entitled to a new trial. Rather, "[t]he effect of the error [must first be] evaluated by assessing it in the context of the untainted evidence [in order] to determine whether it is more probable than not that a different outcome would have resulted without the error." *People v Lukity*, 460 Mich 484, 495; 596 NW2d 607 (1999). In this case, the untainted evidence supports that a large amount of money and heroin was located in one of the residences associated with Morgan, and heroin was found in the vehicle Morgan was driving when he was arrested. Packaging material and scales were located in both residences associated with Morgan, and testimony at trial supported that this evidence was consistent with the intent to deliver narcotics. Thus, the prosecutor presented overwhelming evidence indicative of possession with intent to deliver heroin. In light of this evidence, it is not more probable than not that the jury's verdict would have been different without the evidence of the controlled buys. See *id*.

## VI. REQUEST FOR APPOINTED DEFENSE INVESTIGATOR

Morgan argues that the trial court abused its discretion by denying his motion to authorize an expenditure of $500 to engage a private investigator. We disagree.

We review a trial court's denial of a criminal defendant's request for a court-appointed investigator for an abuse of discretion. *People v Johnson*, 245 Mich App 243, 260; 631 NW2d 1 (2001). An indigent criminal defendant may be entitled the services of an appointed private investigator upon showing that, under the facts and circumstances of the case, the defendant needs an investigator to satisfy the defendant's due process right to present a defense. *Id*.

Morgan requested a private investigator to help locate Morgan's girlfriend, to conduct a pretrial interview with her, and to advise the defense on strategy relating to her. We conclude that Morgan failed to establish that the private investigator was necessary to satisfy his due process right to present a defense. At the hearing on Morgan's motion, the prosecutor argued that engaging a private investigator was not necessary because it was his obligation to help locate Morgan's girlfriend and to ensure that she appeared for an interview. The trial court stated that it was willing to sign a subpoena in order to secure Morgan's girlfriend's appearance at the interview and noted that Morgan's girlfriend could be transported to the interview by law enforcement if necessary. Trial counsel stated his concern that if he conducted the interview by himself, any statements made by Morgan's girlfriend would not be able to be used as

---

[1] The trial court instructed the jury to "be very careful" when considering evidence of crimes for which Morgan was not on trial. The trial court further instructed, "you must not decide that it shows that [Morgan] is a bad person or that he is likely to commit crimes," and "[y]ou must not convict [Morgan] here because you think he is guilty of other bad conduct."

impeachment evidence at trial since counsel is not permitted to be a witness. In response, the prosecutor indicated that he would arrange for the interview to be recorded so that relevant portions of the interview could be played at trial for purposes of impeachment. The trial court agreed with the prosecutor's suggestion and noted that if Morgan's girlfriend provided information during the interview that called for the services of a private investigator, the court would approve Morgan's request to appoint an investigator. There is no indication in the record that Morgan filed another motion to request the appointment of an investigator based on statements that Morgan's girlfriend made during the interview, and Morgan's girlfriend did not testify at the second trial. Therefore, because Morgan failed to establish that the appointment of a private investigator was necessary to present a defense, the trial court did not abuse its discretion by denying the motion.

## VII. ASSISTANCE OF COUNSEL

Morgan argues that he is entitled to a new trial because trial counsel provided ineffective assistance for multiple reasons, each of which we will address below. Morgan failed to raise an ineffective assistance of counsel claim in the trial court in connection with a motion for a new trial or a *Ginther*[2] hearing. Therefore, our review of this issue is limited to mistakes apparent from the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Id*.

## 1. PRIVATE INVESTIGATOR

Morgan argues that trial counsel was ineffective for failing to provide the trial court with additional reasons to appoint a private investigator. More specifically, Morgan argues that trial counsel should have argued that the defense required an investigator's assistance to locate potential witnesses, including the registered owner of the vehicle that Morgan was driving when he was arrested, and the individual with whom he was talking to on the phone when he was arrested. Morgan also argues that counsel was ineffective for failing to call those witnesses at trial. We disagree.

Morgan further argues that presenting testimony from these witnesses was necessary "to explain who else had access to the vehicle [Morgan] was in when he was arrested and what really happened during that arrest." However, Morgan fails to indicate what testimony these witnesses might have provided that would have been of significant value to the defense. Access others had to the vehicle that Morgan was driving during the controlled purchases and his arrest was of little importance because Morgan was convicted of the heroin offense on the basis of the discovery of heroin at one of the residential addresses. Although the key to the storage unit was also located in the vehicle, Morgan had already been observed traveling to the storage facility,

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

and the key was located in the same bag that contained Morgan's identification. Additionally, testimony at trial established that Morgan refused to comply with Michigan State Police Trooper Michael Baker's instructions to either roll down the window or unlock the door. Although Morgan attempts to justify his decision not to comply with Trooper Baker's instructions, Morgan does not deny that he failed to comply or that Trooper Baker's instructions were lawful. See MCL 750.81d(1); *People v Moreno*, 491 Mich 38, 52; 814 NW2d 624 (2012). Moreover, as already discussed, the prosecutor offered to assist trial counsel with locating these witnesses, and trial counsel declined the offer. Therefore, because Morgan has failed to establish that the appointment of a private investigator was necessary to locate these witnesses and that the failure to call the witnesses at trial deprived him of a substantial defense, Morgan has failed to establish that trial counsel was ineffective in this regard. See *People v Brown*, 279 Mich App 116, 142; 755 NW2d 664 (2008) ("It is well established that defense counsel is not ineffective for failing to pursue a futile motion."); *People v Jackson (On Reconsideration)*, 313 Mich App 409, 432; 884 NW2d 297 (2015) (failure to present certain evidence does not constitute ineffective assistance of counsel if the defendant was not deprived of a substantial defense).

## 2. PRODUCTION OF CONFIDENTIAL INFORMANT

Morgan argues that trial counsel was ineffective for failing to request production of the confidential informant so that he could be called as a witness and "his credibility could be challenged." We disagree.

The prosecution has no general obligation to disclose the identity of a confidential informant. *People v Henry (After Remand)*, 305 Mich App 127, 156; 854 NW2d 114 (2014). "However, when a defendant demonstrates a possible need for the informant's testimony, a trial court should order the informant produced and conduct an *in camera* hearing to determine if the informant could offer any testimony beneficial to the defense." *Id*. (emphasis added). In making this determination, the trial court should consider "the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id*. (citation omitted).

Although the confidential informant's credibility had bearing on the decision of law enforcement to rely on the informant for purposes of the investigation, Morgan does not specify in what regard the informant's credibility might have factored significantly into the jury's deliberations. The informant helped law enforcement identify and expose Morgan as a heroin dealer. However, at trial, police officers testified about Morgan's participation in the controlled purchases and the fact that heroin and packaging paraphernalia were discovered in one of the residences associated with Morgan. Trial counsel thus had little to gain from any cross-examination of the informant. To the extent that the informant's credibility might have been of interest to the jury, challenging it in court would have brought the risk that the prosecution would seize the opportunity to present the informant in a favorable light. Trial counsel might well have thought the potential benefit was not worth the potential risk. Because it is not apparent that the confidential informant's testimony at trial would have been beneficial to the defense, trial counsel's failure to seek production of the confidential informant did not constitute ineffective assistance of counsel. See *Brown*, 279 Mich App at 142.

## VIII. MORGAN'S STANDARD 4 BRIEF

In a pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Morgan raises additional issues on appeal. We conclude that none of these issues have merit.

## A. FOURTH AMENDMENT VIOLATIONS

Morgan argues that the trial court improperly denied his motion to suppress the evidence located on his person and in his vehicle after his arrest because Morgan was unlawfully arrested and the searches were conducted without warrants. We disagree.

The United States Supreme Court has established a number of exceptions to the search warrant requirement, including the search incident to arrest. *Toohey*, 438 Mich at 271 n 4, citing *People v Blasius*, 435 Mich 573, 582; 459 NW2d 906 (1990). "A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search[.]" *US v Robinson*, 414 US 218, 235; 94 S Ct 467; 38 L Ed 2d 427 (1973). In order to effectuate a lawful arrest, a police officer may obtain an arrest warrant from a magistrate after demonstrating probable cause. *People v Manning*, 243 Mich App 615, 621; 624 NW2d 746 (2000). In order to lawfully arrest a person without a warrant, however, a police officer must possess information demonstrating probable cause to believe that an offense has occurred and that the defendant committed it. *People v Cohen*, 294 Mich App 70, 74-75; 816 NW2d 474 (2011).

We conclude that there was sufficient evidence to establish that Morgan was lawfully arrested. Trooper Baker testified that he was instructed to arrest Morgan on March 4, 2015. Before the arrest, other members of law enforcement informed Trooper Baker that Morgan was observed selling controlled substances during controlled purchases, which is a criminal offense. Although Morgan argues that Trooper Baker did not observe him commit a crime or have probable cause to believe that he was about to commit a crime, MCL 764.15(1) permits a peace officer to arrest a person without a warrant where "[t]he person has committed a felony although not in the peace officer's presence." MCL 764.15(1)(b). It is well settled that "a police officer is entitled to rely on the representations of his fellow officers in the determination of whether there is probable cause to effect an arrest." *People v Himmelein*, 177 Mich App 365, 370; 442 NW2d 667 (1989), citing *Whiteley v Warden*, 401 US 560; 91 S Ct 1031; 28 L Ed 2d 306 (1971). Because other members of law enforcement observed Morgan commit a criminal offense, Trooper Baker's arrest of Morgan was lawful and the search of Morgan's person was proper pursuant to the search incident to arrest exception. See *Illinois v Lafayette*, 462 US 640, 644-645; 103 S Ct 2605; 77 L Ed 2d 65 (1983) (holding that an officer may "search the area within the arrestee's immediate control").

With respect to Morgan's argument that law enforcement lacked probable cause to search the vehicle, this argument was poorly developed below. Although Morgan sought to suppress evidence that was obtained as a result of the traffic stop and Deputy William Lo testified about his search of the vehicle Morgan was driving, very little evidence concerning the justification for the search of the vehicle was elicited at the evidentiary hearing. At the close of testimony, neither trial counsel nor the prosecutor made arguments in relation to the search of the vehicle,

and the trial court only made a general ruling that the court could not suppress the evidence that "came from [the stop]."

To the extent that the trial court erred by holding that evidence located from the vehicle should not be suppressed based on the evidence presented at the hearing, we find that such an error would be harmless pursuant to the inevitable discovery doctrine. See *Hyde*, 285 Mich App at 439. As already stated, members of law enforcement observed Morgan selling heroin during controlled purchases while he was driving the motor vehicle in question. At the time of Morgan's arrest, Morgan was forcibly removed from the vehicle and prerecorded funds were located on his person. Law enforcement had already obtained search warrants for two residences associated with Morgan in relation to the controlled purchases that were witnessed by law enforcement. Heroin, cocaine, a large sum of money, and prerecorded funds were located in one of the residences tied to Morgan. Packaging materials consistent with the materials used during the controlled purchases were located in both residences. Thus, the record evidence supports that law enforcement would have been able to secure a search warrant for the vehicle. Consequently, any error in failing to suppress the evidence located in the vehicle Morgan was driving when he was arrested was harmless.

## B. CONSTITUTIONALITY OF MCL 764.15(1)(b)

Morgan argues that his arrest was unlawful because MCL 764.15(1)(b) is unconstitutionally vague. Because Morgan failed to raise this issue before the trial court, the argument is unpreserved. Therefore, we apply the plain-error rule, which requires that "1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). An error has affected a defendant's substantial rights when there is "a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. Moreover, "once a defendant satisfies these three requirements, . . . [r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted; alteration in original). A defendant bears the burden of persuasion with respect to prejudice. *Id*. at 763.

The party challenging the constitutionality of a statute bears the burden of proving its invalidity. *People v Gregg*, 206 Mich App 208, 210; 520 NW2d 690 (1994). In *People v Lino*, 447 Mich 567, 575 n 2; 527 NW2d 434 (1994), our Supreme Court noted that a constitutional challenge based on vagueness "is brought under the Due Process Clause of the Fourteenth Amendment of the United States Constitution." The *Lino* Court, explaining the vagueness doctrine, stated that "[i]n order to pass constitutional muster, a penal statute must define the criminal offense 'with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.' " *Id*. at 575, quoting *Kolender v Lawson*, 461 US 352, 357; 103 S Ct 1855; 75 L Ed 2d 903 (1983). In this case, however, MCL 764.15(1)(b) does not fail to provide notice of what conduct is prohibited; nor does the statutory language encourage arbitrary and discriminatory enforcement of a penal statute. Rather, MCL 764.15(1)(b) permits a peace officer to arrest a person without a warrant where "[t]he person has committed a felony although not in the peace officer's presence." Because MCL 764.15(1)(b) unambiguously provides a criteria for

-13-

a valid warrantless arrest, Morgan's argument that MCL 764.15(1)(b) is unconstitutionally vague is without legal merit. Morgan also argues in a cursory manner that the application of MCL 764.15(1)(b) violated several of his constitutional rights. However, because Morgan fails to present this argument in a meaningful and understandable manner, it is abandoned. See *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004).

## C. JURY INSTRUCTIONS

Morgan challenges his conviction of resisting or obstructing a police officer on the ground that the trial court's instructions to the jury in connection with that charge did not include a specific unanimity requirement. However, trial counsel expressed satisfaction on the record with the instructions as given, thereby affirmatively waiving, or extinguishing, appellate objections, leaving nothing for this Court to review. *People v Carter*, 462 Mich 206, 214-216; 612 NW2d 144 (2000). See also *People v Lueth*, 253 Mich App 670, 688; 660 NW2d 322 (2002).

## D. PROSECUTORIAL ERROR

Morgan argues that the prosecutor committed error by withholding exculpatory evidence and by offering certain evidence without laying the proper foundation. We disagree.

"To preserve an issue of prosecutorial [error], a defendant must contemporaneously object and request a curative instruction." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Because that did not occur here, we apply the plain-error rule. See *Carines*, 460 Mich at 763.

### 1. *BRADY* VIOLATION

Morgan argues that the prosecutor failed to produce or disclose evidence in violation of *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), and that trial counsel was ineffective for failing to file a motion to compel or address the issue before trial. We disagree.

"Under *Brady*, the State violates a defendant's right to due process if it withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment." *Smith v Cain*, 565 US 73; 132 S Ct 627, 630; 181 L Ed 2d 571 (2012). "Impeachment evidence . . . as well as exculpatory evidence, falls within the *Brady* rule." *United States v Bagley*, 473 US 667, 676; 105 S Ct 3375; 87 L Ed 2d 481 (1985). "Such evidence is 'evidence favorable to an accused,' " "that, if disclosed and used effectively, . . . may make the difference between conviction and acquittal." *Id*., quoting *Brady*, 373 US at 87.

In this case, Morgan does not assert that trial counsel requested and was refused any of the items he specifies on appeal. In arguing that he was prejudiced for want of access to certain evidence, Morgan asserts only that "[i]t would have offered the defense an opportunity to inspect, prepare, and impeach the witness's credibility and validity of the existence of unproduced evidence." However, such unsupported speculation does not satisfy the *Brady* requirement to show that the evidence in question was exculpatory, or withheld by the prosecution, or that the defense suffered any prejudice for want of a closer look. Consequently,

Morgan's prosecutorial misconduct claim fails in this respect, as does Morgan's claim of ineffective assistance of counsel. See *Brown*, 279 Mich App at 142.

## 2. PROPER FOUNDATION

Morgan argues that the prosecutor improperly introduced evidence into the record without laying a proper foundation and that trial counsel was ineffective for failing to object. Specifically, Morgan argues that the prerecorded funds from the controlled purchases, the drugs that were found in the vehicle after Morgan was arrested, and the firearm found in the storage unit were improperly introduced. In so arguing, however, Morgan does not indicate what the proper foundation would have been. Additionally, and importantly, Morgan fails to recognize that the funds from the controlled purchases and the drugs that were found in the vehicle that Morgan was driving when he was arrested were not admitted into evidence. Consequently, Morgan has failed to establish plain error with respect to the money and the drugs that were located in the vehicle. Moreover, even if Morgan was correct that the proper foundation was not laid before the firearm located in the storage unit was admitted into evidence, Morgan would not be entitled to relief. Deputy Lo testified that he located the firearm in the storage unit and described the gun to the jury based on his personal observations. Therefore, even if the gun was not admitted into evidence, the jury would have been aware through the testimony of Deputy Lo that a gun was located in the storage unit. Consequently, Morgan has failed to establish plain error affecting his substantial rights, and has failed to establish that his counsel was ineffective for failing to object. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) (stating that counsel is not ineffective for failing to raise a meritless argument).

## E. ASSISTANCE OF COUNSEL

Morgan argues that trial counsel was ineffective for introducing the wrong photograph of a pill bottle into evidence and for failing to effectively impeach one of the prosecutor's witnesses. In so arguing, however, Morgan does not provide the photographs or video that he relies on to support that trial counsel was ineffective. Because Morgan has failed to establish the necessary factual predicate for his claim of ineffective assistance of counsel, it must fail. See *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Morgan alternatively requests a remand for a *Ginther* hearing. Because Morgan has not set forth any facts that would require development of a record to determine if trial counsel was ineffective, we deny Morgan's request for a remand. *People v Williams*, 275 Mich App 194, 200; 737 NW2d 797 (2007), citing MCR 7.211(C)(1)(a).

## IX. CORRECTION OF MORGAN'S SENTENCE

Although not raised by the parties on appeal, we conclude that the trial court erred when it ordered the felony-firearm sentence to be served consecutive to all of Morgan's other sentences.

"[T]he Legislature intended that a felony-firearm sentence be consecutive only to the sentence for a specific underlying felony." *People v Clark*, 463 Mich 459, 463; 619 NW2d 538 (2000). See also *People v Coleman*, 327 Mich App 430, 441; ___ NW2d ___ (2019) ("A felony-firearm sentence must . . . be served consecutively with [only] the sentence for the one predicate

felony."). In this case, the trial court instructed the jury on felony-firearm with felon in possession as the predicate felony. The trial court therefore erred by ordering the felony-firearm sentence to be served consecutive to Morgan's sentences for possession with intent to deliver 50 or more but less than 450 grams of heroin and resisting or obstructing a police officer. We remand to the trial court for the ministerial task of correcting the judgment of sentence to indicate that the felony-firearm sentence is to be served consecutive only to the felon-in-possession sentence and to transmit the appropriate paperwork to the Department of Corrections to indicate the correction.

We affirm Morgan's convictions and remand to the trial court for correction of Morgan's judgment of sentence. We do not retain jurisdiction.

/s/ Anica Letica
/s/ Michael F. Gadola
/s/ Thomas C. Cameron